UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TAMARA F. GILES,<br><br>    Plaintiff,<br><br> v.<br><br>NANCY A. BERRYHILL[*], Acting<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. 2:16-cv-01604-BNW<br><br>**ORDER** |

This case involves review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff Tamara F. Giles' ("Plaintiff") application for disability insurance benefits under Title II of the Social Security Act ("Act") and supplemental security income under Title XVI of the Act. The court has reviewed Plaintiff's motion for reversal or remand (ECF No. 20), filed December 22, 2016; the Commissioner's response and cross-motion to affirm (ECF No. 25), filed April 10, 2017; and Plaintiff's reply (ECF No. 26), filed April 28, 2017. The parties consented to the case being heard by a magistrate judge in accordance with 28 U.S.C. § 636(c) on July 10, 2017. (ECF No. 27). This matter was assigned to the undersigned magistrate judge on May 2, 2019 for an order under 28 U.S.C. § 636(c).

**I. BACKGROUND**

On August 9, 2013, Plaintiff applied for disability insurance benefits under Title II and Title XVI of the Act, alleging an onset date of December 1, 2012. AR[1] 222-225, 226-233. Plaintiff's claim was denied initially on November 15, 2013, and on reconsideration on December 18, 2013. AR 148-153, 156-158. A hearing was held before an Administrative Law Judge

---

[*] Nancy A. Berryhill has been substituted for her predecessor in office, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

[1] AR refers to the Administrative Record in this matter. (Notice of Manual Filing (ECF No. 13)).

("ALJ") on November 17, 2015, where the ALJ heard testimony from Plaintiff and a vocational expert. AR 38-87. On February 26, 2016, the ALJ issued a decision finding Plaintiff was not disabled. AR 17-31. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on May 12, 2016. AR 1-6. Plaintiff, on July 7, 2016, commenced this action for judicial review under 42 U.S.C. § 405(g). (*See* IFP App. (ECF No. 1).)

## II. DISCUSSION

### 1. Standard of Review

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) reads: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The Ninth Circuit reviews a decision affirming, modifying, or reversing a decision of the Commissioner *de novo*. *See Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole,

weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### 2. Disability Evaluation Process

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of his claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If

at any step the ALJ determines that he can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of "not disabled" is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[2] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of "not disabled" is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

---

[2] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are entitled to some deference as long as they are consistent with the Social Security Act and regulations. *Bray*, 554 F.3d at 1223 (finding ALJ erred in disregarding SSR 82-41).

| | |
|---|---|
| 1 | Before moving to step four, however, the ALJ must first determine the individual's |
| 2 | residual functional capacity ("RFC"), which is a function-by-function assessment of the |
| 3 | individual's ability to do physical and mental work-related activities on a sustained basis despite |
| 4 | limitations from impairments. *See* 20 C.F.R. § 404.1520(e); see also SSR 96-8p. In making this |
| 5 | finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to |
| 6 | which the symptoms can reasonably be accepted as consistent with the objective medical |
| 7 | evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 96-7p. To the |
| 8 | extent that statements about the intensity, persistence, or functionally limiting effects of pain or |
| 9 | other symptoms are not substantiated by objective medical evidence, the ALJ must make a |
| 10 | finding on the credibility of the individual's statements based on a consideration of the entire case |
| 11 | record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 |
| 12 | C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. |
| 13 | Step four requires the ALJ to determine whether the individual has the RFC to perform |
| 14 | her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either |
| 15 | as the individual actually performed it or as it is generally performed in the national economy |
| 16 | within the last 15 years or 15 years before the date that disability must be established. In |
| 17 | addition, the work must have lasted long enough for the individual to learn the job and performed |
| 18 | a SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform her |
| 19 | past work, then a finding of "not disabled" is made. If the individual is unable to perform any |
| 20 | PRW or does not have any PRW, then the analysis proceeds to step five. |
| 21 | The fifth and final step requires the ALJ to determine whether the individual is able to do |
| 22 | any other work considering her RFC, age, education, and work experience. 20 C.F.R. |
| 23 | § 404.1520(g). If she can do other work, then a finding of "not disabled" is made. Although the |
| 24 | individual generally continues to have the burden of proving disability at this step, a limited |
| 25 | burden of going forward with the evidence shifts to the Commissioner. The Commissioner is |
| 26 | responsible for providing evidence that demonstrates that other work exists in significant numbers |
| 27 | in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42. |
| 28 | |

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. AR 22-31. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from the alleged onset date of December 1, 2012 through the date of the decision. AR 22. At step two, the ALJ found that Plaintiff had medically determinable "severe" impairments of anxiety disorder, depressive disorder, degenerative disc disease of the lumbar spine, and carpal tunnel syndrome. *Id.* The ALJ found Plaintiff's impairments of hypertension and knee pain to be "non-severe." [3] AR 23. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* At step four, the ALJ found Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except for any work involving standing or walking for more than four hours in an eight-hour workday; any work involving climbing ladders, ropes, or scaffolds; any work involving more than occasionally climbing ramps or stairs or more than occasionally kneeling, crouching, or crawling; any work involving hazards; and any work involving performing bilateral gross and fine manipulation. AR 24. The ALJ found Plaintiff is unable to perform any past relevant work. AR 29-30. The ALJ also found Plaintiff, considering her age, education, work experience, and RFC, could perform the requirements of a systems surveillance monitor,[4] a

---

[3] At "each level in the administrative review process," the SSA must follow a special technique to evaluate mental impairments at steps two and three. 20 C.F.R. § 404.1520(a). The special technique requires the ALJ to substantiate the presence of a medically determinable impairment using pertinent symptoms, signs, and laboratory findings, and then to rate the degree of functional limitation that results from the mental impairment in four broad categories: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* § 404.1520a(b)-(c). If the degree of limitation in the first three categories is none or mild, and the claimant has no episodes of decompensation of extended duration, then the claimant's mental impairment is not severe. *Id.* § 404.1520a(d)(1). Here, the ALJ found that the severity of Plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06" because Plaintiff has "moderate restriction in activities of daily living, mild difficulties in social functioning, moderate difficulties with regard to concentration, persistence or pace, and no episodes of decompensation, which have been of extended duration." AR 23.

[4] The ALJ refers to the position as "systems surveillance monitor" whereas the *Dictionary of Occupational Titles* refers to the position as "surveillance system monitor[.]" The court will use the DOT language.

school bus monitor, and an investigator. AR 31. Accordingly, the ALJ concluded Plaintiff was not under a disability at any time from December 1, 2012 through the date of the decision. *Id*.

**3. Analysis**

**a. Whether the ALJ properly resolved actual and apparent conflicts between the vocational expert's testimony and the *Dictionary of Occupational Titles***

The ALJ found Plaintiff had the RFC to perform "light" work as defined in 20 C.F.R. §§ 404.157(b) and 416.967(b) with two important exceptions for purposes of this order.[5] These include that Plaintiff cannot (1) stand or walk for more than four hours in an eight-hour day; or (2) perform bilateral gross and fine manipulation. AR 24. The ALJ, through her reliance on the vocational expert's ("VE") testimony, nonetheless found Plaintiff could work as a surveillance system monitor (classified as "sedentary" work in the *Dictionary of Occupational Titles* ("DOT")), school bus monitor (classified as "light" work in the DOT), and investigator (classified as "light" work in the DOT). AR 31. Finally, the ALJ found the VE's testimony "consistent with the information contained in the [DOT]." *Id*.

Plaintiff argues the VE did not adequately explain and the ALJ did not resolve the actual and apparent conflicts between the Plaintiff's limitations and the work the VE testified Plaintiff could perform. Plaintiff argues there is an actual conflict between the VE's testimony regarding Plaintiff's ability to be an investigator, which requires occasional handling and fingering, and Plaintiff's RFC that limits her to no bilateral manipulation. Plaintiff further argues there is an apparent conflict between the VE's testimony regarding Plaintiff's ability to be an investigator and school bus monitor, which both have a potential six-hour standing/walking requirement, and Plaintiff's RFC to stand/walk for only four hours. Plaintiff does not dispute her "physical ability to perform" the position of surveillance system monitor.

The Commissioner responds by arguing there are no inconsistencies between Plaintiff's standing/walking abilities and the jobs the ALJ found Plaintiff can do, as the DOT definitions upon which the VE and ALJ relied provide only the potential maximum requirements for "light"

---

[5] A plaintiff's RFC is "the most" she "can still do despite" physical and mental limitations that affect her ability to work. 20 C.F.R. § 416.945(a)(1).

1  work. The Commissioner further argues Plaintiff waived this claim by not having her attorney
2  question the VE about the alleged inconsistencies at Plaintiff's hearing. The Commissioner does
3  not squarely respond to the conflict between Plaintiff's bilateral manipulation abilities and the
4  DOT requirements for the investigator position.

5  The court will address the Commissioner's waiver argument first. The Ninth Circuit has
6  held that plaintiffs who are represented by counsel should raise issues about vocational
7  testimonial methodology at the ALJ hearing to preserve those issues on appeal. *Lamear v.*
8  *Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017). The Circuit, however, has also noted that the
9  "law is clear that a counsel's failure does not relieve the ALJ of [her] express duty to reconcile
10 apparent conflicts through questioning." *Id*. Additionally, it appears that in this case, Plaintiff
11 was represented by a non-attorney representative. AR 40. Accordingly, this court will address
12 whether the ALJ reconciled apparent inconsistencies between the VE's testimony and the DOT
13 on the merits.

14 Soc. Sec. Rul. 00-4p requires the ALJ to inquire, on the record, as to whether there is
15 consistency between the VE testimony and the DOT.[6] The DOT is a "resource compiled by the
16 Department of Labor that details the specific requirements for different occupations." *Gutierrez*
17 *v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016). The DOT "refers to 'occupations,' not to specific
18 jobs. 'Occupation' is a broad term that includes 'the collective description' of 'numerous jobs'
19 and lists 'maximum requirements' of the jobs as 'generally performed.'" *Id.* (quoting SSR 00-
20 4p).

21 The ALJ may rely on the VE's testimony "'even if it is inconsistent with the job
22 descriptions set forth in the *Dictionary*[.]'" *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir.
23 1995) (quoting *Conn v. Secretary of Health and Human Services,* 51 F.3d 607, 610 (6th Cir.
24 1995)). However, in the event there is a conflict (or an apparent conflict) between the VE's
25 testimony and the DOT, the ALJ must determine whether the VE's explanation of why the

---

[6] According to the U.S. Department of Labor's Office of Administrative Law Judges Law Library, the DOT was last updated in 1991 and has since been replaced by the O*NET, the primary source of occupational information. The DOT, however, continues to be used in Social Security disability adjudications.

Plaintiff can still perform a certain occupation is reasonable and provides a basis for relying on the VE's testimony rather than on the DOT. SSR 00-4p; *Lamear*, 865 F.3d at 1206 ("When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile this inconsistency."); *see also Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014) ("The ALJ is not absolved of this duty [to reconcile conflicts] merely because the VE responds 'yes' when asked if h[is] testimony is consistent with the DOT.")

If the ALJ does not pursue this line of inquiry to reconcile discrepancies between a VE's testimony and the DOT, the court cannot determine whether substantial evidence supports the ALJ's step-five findings relating to whether the plaintiff can perform jobs that exist in significant numbers in the economy. *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007). Accordingly, the ALJ errs where there is no explanation for the conflict in the record. *See id*. at 1154 n.19; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008).

Here, the ALJ did not reconcile the actual conflict between the VE's testimony and the DOT. The VE specifically testified that the investigator position does not, per the DOT, require "reaching, handling, and fingering[,]" and therefore is a job Plaintiff can perform despite her bilateral manipulation limitation. AR 85. The DOT, however, explains that the investigator position (DOT 241.367-038) requires "occasionally" reaching, handling, and fingering. *Dictionary of Occupational Titles*, 4th Ed. (Revised 1991). The ALJ did not, as required under SSR 00-4p, resolve this conflict before relying on the VE's testimony to support a non-disability determination. *See* SSR 00-4p ("The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.") In fact, the ALJ "determined that the vocational expert's testimony [wa]s consistent with the information contained in the Dictionary of Occupational Titles." AR 31. Accordingly, the ALJ erred.

The ALJ also did not reconcile the apparent conflict between the VE's testimony and the DOT relating to Plaintiff's standing/walking limitations. The VE specifically testified that there

was a discrepancy between Plaintiff's four-hour stand/walk requirement and the DOT's six-hour walk/stand requirement for light work. AR 82. However, when the ALJ asked if the VE's testimony that the Plaintiff could be a surveillance system monitor, school bus monitor, and investigator was consistent with the DOT, the VE said yes. AR 84-85. The VE did not explain, nor did the ALJ ask, why the VE believed Plaintiff could perform the occupations of school bus monitor or investigator that could potentially require the Plaintiff to stand/walk for six hours. Accordingly, the ALJ erred.

Whether the ALJ's error is harmless depends on the second issue the parties raised (i.e., whether there is a significant number of jobs in the regional or national economy that Plaintiff can still perform given that the record does not support Plaintiff's ability to be a school bus monitor or investigator).

### b. Whether a significant number of jobs exist in the economy that Plaintiff can perform

The vocational expert ("VE") testified Plaintiff could perform the jobs of surveillance system monitor, school bus monitor, and investigator. AR 85. The ALJ found, based on the VE's testimony, that these jobs existed in significant numbers in the national economy. AR 31. Plaintiff argues in her opening brief that the VE's testimony relating to the number of jobs available in the national economy relied on "questionable calculations" and therefore cannot be "substantial evidence to support the ALJ's non-disability finding." Plaintiff's argument centers around the fact that the number of jobs that exist for any particular DOT occupation is only estimated (through a process of aggregating and dividing data).

The Commissioner's response does not squarely address Plaintiff's "data aggregation" argument. Rather, the Commissioner argues that the VE testified that there were over 100,000 jobs available in the national economy (between the three jobs the VE testified the Plaintiff can perform), and this figure is a "significant number."

In Plaintiff's reply, she reasserts her "data aggregation" argument. She also argues that jobs do not exist in significant numbers in the regional or national economy that she can do, given that the only job she can do that the VE testified about is surveillance system monitor.

As an initial matter, Plaintiff does not cite any binding authority for her "data aggregation" argument. The only authority Plaintiff cites is a Second Circuit case, *Brault v. Social Security Admin.*, 638 F.3d 443 (2nd Cir. 2012), in which the Second Circuit acknowledged that the number of jobs that exist for any particular DOT occupation "may deviate significantly from the actual number of existing positions." *Id.* at 447, n.4. However, the court in *Brault* did not hold that if such data is relied on by an ALJ, the ALJ's decision is not supported by substantial evidence. Put another way, reliance on this data is not a reason to reverse or remand an ALJ decision. Accordingly, the Plaintiff has not provided any authority that would allow the court to reverse or remand based on Plaintiff's "data aggregation" argument. *See* LR 7-2(d) ("The failure of a moving party to file points and authorities in support of the motion constitutes a consent to denial of the motion.")

The question remains, however, whether a significant number of jobs exist in the economy that Plaintiff can perform. Once an ALJ determines the plaintiff's RFC and further determines the plaintiff is unable to perform any PRW, the burden of proof shifts to the Social Security Administration to prove the plaintiff can make an adjustment to work that "exists in significant numbers . . . in the country . . . ." 20 C.F.R. §§ 404.1566(a) and 416.966(a). The statutes indicate that the "'significant number of jobs' can be either regional jobs (the region where a claimant resides) or in several regions of the country (national jobs)." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523-24 (9th Cir. 2014) (citing *Beltran v. Astrue*, 700 F.3d 386, 389-90 (9th Cir. 2012)). If a court finds "*either* of the two numbers 'significant,' then [it] must uphold the ALJ's decision." *Beltran*, 700 F.3d at 390 (citing 42 U.S.C. § 423(d)(2)(A)) (emphasis in original).

An ALJ errs when she finds a significant number of jobs "where the jobs were 'very rare' or generally unavailable to the [plaintiff] due to h[er] limitations." *Id.* at 389 (quoting *Walker v. Mathews*, 546 F.2d 814, 820 (9th Cir. 1976)). The Ninth Circuit has not established a "bright-line rule for what constitutes a 'significant number' of jobs." *Id.* The Ninth Circuit has, however, held that the availability of 1,680 national jobs does *not* constitute a significant number of jobs, *Id.* at 390, but the availability of 25,000 national jobs presents a "close call," yet nonetheless constitutes a significant number of jobs. *Gutierrez*, 740 F.3d at 528-29. The Ninth Circuit further

has held that between 1,000 and 1,500 surveillance system monitor jobs in the local area constitutes a "significant number." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Similarly, the Circuit has held that 135 regional surveillance monitor jobs "qualifies as a 'very rare' number." *Beltran*, 700 F.3d at 389.

Here, the ALJ found that there are 308 surveillance system monitor positions available in Nevada and 17,521 positions available in the U.S. AR 85. The ALJ found these figures, along with the regional and national jobs available for the school bus monitor and investigator positions, to constitute significant numbers. AR 31. As previously discussed, the ALJ erred in finding that Plaintiff could be a school bus monitor and investigator (because she did not reconcile the actual and apparent conflicts between Plaintiff's RFC and the requirements of these jobs under the DOT). Accordingly, the court will only consider the surveillance system monitor position in determining whether there are a significant number of jobs Plaintiff can perform.

The court concludes that neither 308 regional jobs nor 17,521 national jobs constitute a significant number. Instructive in the court's decision are the Circuit's findings in *Beltran* and *Meanel*. Recognizing that 135 regional surveillance monitor jobs "qualifies as a 'very rare' number[,]" *Beltran*, 700 F.3d at 389, and that between 1,000 and 1,500 regional surveillance system monitor jobs constitute a "significant number[,]" *Meanel*, 172 F.3d at 1115, the court finds 308 regional surveillance system monitor positions closer to the "very rare" end of the spectrum (i.e., 135 regional surveillance system monitor positions). Similarly, in light of the Ninth Circuit holding in *Guitierrez*, 740 F.3d at 528-29, that 25,000 national jobs is a "close call[,]" the court does not find that a figure 7,479 below that constitutes a significant number.[7]

Accordingly, the record does not support a finding that a significant number of jobs exist in the regional or national economy for the surveillance system monitor position. This further

---

[7] The Commissioner argues that the court in *Gutierrez* cited an Eighth Circuit case with approval for the proposition that 10,000 jobs nationally is significant. First, it is not clear that the court in *Gutierrez* cited this case with approval; rather, the court appears to simply be acknowledging that other Circuits have found less than 25,000 jobs nationally significant. Second, in the Eighth Circuit case that is cited, *Johnson v. Chater*, 108 F.3d 178, 179 (8th Cir. 1997), the VE testified that the 10,000 jobs that existed nationally was merely representative of a larger category of jobs that plaintiff could perform, including another job (i.e., telemarketer) that the plaintiff was actually performing at the time of the hearing. Accordingly, the court is not persuaded that 17,521 national jobs is a significant number.

means that the record does not support a finding that a significant number of jobs exist in the regional or national economy that Plaintiff can perform. Importantly, this means the ALJ's errors regarding failing to reconcile the actual and apparent conflicts between the Plaintiff's RFC and the DOT's requirements for school bus monitor and investigator are not harmless.

### III. CONCLUSION

Accordingly, IT IS ORDERED that Plaintiff's motion to remand (ECF No. 20) be GRANTED for further proceedings in accordance with this order.

IT IS FURTHER ORDERED that the Commissioner's cross-motion to affirm (ECF No. 25) be DENIED.

DATED: November 18, 2019

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE